# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT EMERSON FELIX,<br><br>Plaintiff,<br><br>v.<br><br>CLANDENIN, *et al.*,<br><br>Defendants. | Case No. 1:23-cv-01074-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDNGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO OBEY A COURT ORDER, AND FAILURE TO PROSECUTE<br><br>(ECF No. 12)<br><br>**FOURTEEN (14) DAY DEADLINE** |

### I. Background

Plaintiff Scott Emerson Felix ("Plaintiff") is a civil detainee proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Individuals detained pursuant to California Welfare and Institutions Code § 6600 *et seq.* are civil detainees and are not prisoners within the meaning of the Prison Litigation Reform Act. *Page v. Torrey*, 201 F.3d 1136, 1140 (9th Cir. 2000).

On November 19, 2025, the Court screened Plaintiff's complaint and found that it failed to state a cognizable claim for relief and failed to comply with Federal Rules of Civil Procedure 8, 18, and 20. (ECF No. 12.) The Court issued an order granting Plaintiff leave to file a first

1

1  amended complaint or notice of voluntary dismissal within thirty (30) days.  (*Id.*)  The Court

2  expressly warned Plaintiff that the failure to comply with the Court's order would result in a

3  recommendation for dismissal of this action, with prejudice, for failure to obey a court order and

4  for failure to state a claim.  (*Id.*)  Plaintiff failed to file an amended complaint or otherwise

5  communicate with the Court, and the deadline to do so has expired.

6       **II.**     **Failure to State a Claim**

7       **A. Screening Requirement and Standard**

8  The Court is required to screen complaints brought by prisoners/detainees seeking relief

9  against a governmental entity and/or against an officer or employee of a governmental entity.  28

10  U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is

11  frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks

12  monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

13  A complaint must contain "a short and plain statement of the claim showing that the

14  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

15  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

16  conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

17  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as

18  true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*,

19  572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

20  To survive screening, Plaintiff's claims must be facially plausible, which requires

21  sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

22  for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*

23  *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully

24  is not sufficient, and mere consistency with liability falls short of satisfying the plausibility

25  standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

26       **B. Plaintiff's Allegations**

27  Plaintiff is currently housed at Coalinga State Hospital ("CSH"), where the events in the

28  complaint are alleged to have occurred.  Plaintiff names the following defendants: (1) Stephanie

Clandenin, Director of the Department of State Hospitals ("DSH"); (2) Brandon Price, Executive Director of Coalinga State Hospital ("CSH"); and (3) A. Imparato, Director of Disability Rights California. All defendants are sued in their official and individual capacities.

The claims arise from Plaintiff's health being placed in serious jeopardy during the COVID-19 pandemic. Plaintiff alleges Defendants Clandenin, Price, and Imparato had a duty to ensure CSH patients were safe from harm and that CSH personnel were adequately trained to keep patients safe, including that appropriate policies and practices existed. Defendant Imparato had a duty to ensure that Disability Rights California employees were adequately trained to identify DSH behavior that subjected CSH patients to harm and to ensure that policies and practices existed to ensure the Director of Disability Rights California employees kept CSH patients safe from harm.

The global COVID-19 pandemic was very serious and caused severe respiratory illness, organ damage and chronic medical conditions for those over 50 years old. In 2020, Plaintiff was in his late fifties and now in his sixties. Defendant Clandenin was aware, based on the December 14, 2020 Declaration Perter Chin Hone, M.D. (filed in another case against Clandenin), that CSH patients over 50 were a serious risk of severe consequences including death if they contracted COVID-19.

Defendants had an inadequate response to COVID-19. In March 2020, CSH was placed on a hospital wide lock down. The lockdown continued for various years (including when the complaint was filed on 7/19/23). There were no detailed guidelines regarding the administration of CSH consistent with scientific evidence to safeguard patients from COVID-19. There were not guidelines for adequate mental health treatment consistent with professional standards to address SVPA mental condition. Defendants Clandenin and Price failed to provide specific detailed guidelines that would ensure that CSH patients were afforded conditions of confinement that were consistent with patient's individualized treatment, safety, and security.

Defendants Clandenin and Price permitted CSH staff who interact directly with CSH patients, including Plaintiff, to enter CSH prior to being tested for infection with COVID-19 and received confirmation that they tested negative for COVID-19. Defendants permitted those who

1  were later to have tested positive to interact with CSH patients.  Defendants Clandenin and Price
2  caused CSH patients, including Plaintiff, to needlessly be exposed to COVID-19 and to transmit
3  COVID-19 to numerous CSH patients.
4  Scientific evidence showed that ventilation hoods and N-95 masks were required to
5  prevent individuals from transmitting viruses and that other type of masks, surgical and janitorial,
6  do not adequately prevent transmission of viruses.  Defendant Clandenin and Price did not
7  adequately train CSH personnel or create policies to ensure the ventilation hoods or N-95 masks
8  were required to be worn by personnel prior to entering CSH to ensure adequate protection to
9  patients from COVID-19.  From October 2019 to January 2022, Defendant Clandenin and Price
10 did not adequately train CSH personnel or create polices to ensure that contained ventilation
11 hoods or N-95 masks were provided to CSH patients to ensure an adequate level of protection
12 from COVID-19.  The result was that Clandenin and Price caused numerous CSH patients to
13 contract COVID-19.  Plaintiff witnessed people die which caused Plaintiff emotional anguish.
14 On April 20, 2019, the California Public Defenders Association, the American Civil
15 Liberties Union of Northern California, the Disability Rights California and CACJ issued a letter
16 to defendant Clandenin requesting Clandenin to decrease the population of the facilities by
17 discharging certain residents to have community alternatives and protections for residents who
18 remain.  The letter outlined the grave risks and that DSH houses may patients who are safe to
19 discharge and noted the dangerous conditions.  There was no social distancing. Even as COVID-
20 19 breaks out among patients and staff, patients have been required to spend significant time in
21 crowded spaces with other people.
22 Elizabeth Jones, an expert in monitoring court orders regarding mental health services,
23 filed a declaration in *Hart v. Clandenin*, case no. 5:20cv1559 JGB.  (Attached as Exh. E)
24 Plaintiff found the same things Ms. Jones found – overcrowded, no social distancing, masks,
25 limited disinfecting.  Plaintiff alleges that consistent with the various experts' opinions, Plaintiff
26 had community alternatives that were available to him during the period of COVID-19 that could
27 prevented health risks caused by the dangerous environment, including emotional hardship.  The
28 mental health hardship was known to Clandenin and Price, as a state mental health agency and

4

was informed that those detained during COVID-19 experienced emotional hardship. Defendant Clandenin and Price knew of these facts but failed to create policies that required CSH personnel to investigate community alternatives.  No DSH personnel ever worked with Plaintiff to determine his community alternatives   Defendants Clandenin and Price did not implement any expert recommendations, knowing the substantial risk of harm of COVID-19.

Plaintiff is informed that Fred Berline, M.D. Ph.D., opined that during COVID-19, CSH failed to afford SPVA patients including Plaintiff with adequate mental health treatment designed to afford SVPA patients with an opportunity to be deemed no longer requiring civil commitment. Clandenin and Price failed to create policies that required CSH to provide SVPA detained patients, including Plaintiff with adequate mental health treatment designed to afford CHS's SVPA patients with the opportunity to be deemed no longer requiring civil commitment. Clandenin was aware of the success of remote treatment via the internet but failed to use such method of remote access to treatment provider for SVPA patients.  Since COVID-19, Clandenin's and Price's provision of treatment to SVPA patients, including Plaintiff, was deficient that it can be deemed to rationally afford patients including Plaintiff a reasonable opportunity to be deemed cured and no longer require civil commitment.

Defendants failed to adequately train those tasked with responding to Plaintiff's Public Records Act requests to respond in a timely manner.  Plaintiff waited for months for information about his safety.

Plaintiff filed numerous Patients' Rights Complaint addressing CSH and CSH administrators, including Clandenin and Price, to adequality train, create policies, and ensure compliance with training on policies to adequately protect patients from contracting COVID-19. The employees failed to advocate for DSH and CSH administrators to adequately train, create policies and ensure compliance to protect patients from contracting the COVID-19 virus.

In claims 1 and 2, Plaintiff alleges denial of his Fourteenth Amendment Substantive Due Process rights against being subjected to punitive conditions of confinement against Clandenin and Price.

In claim 3, Plaintiff alleges denial of his Fourteenth Amendment Substantive Due Process

5

rights to be afforded adequate treatment, considered with generally accepted professional standards that afforded Plaintiff a reasonable opportunity to be deemed cured and released.

In claim 4, Plaintiff alleges denial of his Fourteenth Amendment Substantive Due Process rights to have a grievance process and to have patients' right advocate while civilly detained against Imparato. CSH lacked patients' rights advocates to address CSH patients' concerns regarding their safety and conditions of confinement during COVID-19. Imparato failed to take steps to ensure he created policies and adequately trained staff working for CSH's Patient's Rights Officer to ensure that Plaintiff and other patients were afforded advocacy.

As remedies Plaintiff seeks temporary and preliminary injunction prohibiting Clandenin and Price from having supervisory authority over CSH and order a neutral expert to oversee the administration of CSH. Plaintiff seeks declaratory relief and punitive damages.

**C. Discussion**

**Standing to Sue on Behalf of Other Patients**

Insofar as Plaintiff is attempting to assert claims on behalf of other individuals such as other patients, he may not do so. Plaintiff may only represent his own legal interests; he may not represent the legal interests of other inmates or other individuals. "A litigant appearing in propria persona has no authority to represent anyone other than himself" in a civil rights action. *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962); *see also Weaver v. Wilcox*, 650 F.2d 22, 27 (3rd Cir. 1981) ("[A]n inmate does not have standing to sue on behalf of his fellow prisoners. Rather, the prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights." (citations omitted).). "Although a non-attorney may appear in propria persona in his own behalf, that privilege is personal to him. He has no authority to appear as an attorney for others than himself." *C.E. Pope Equity Trust v. U.S.*, 818 F.2d 696, 697 (9th Cir. 1987) (citations omitted).

It is unclear from the allegations which allegations apply solely to Plaintiff and which allegations apply to "other patients."

**Federal Rule of Civil Procedure 8**

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

Here, Plaintiff's complaint is not short. It is not a plain statement of his claims showing that he is entitled to relief. Many of Plaintiff's allegations are repetitive and conclusory and do not state what happened, when it happened, or which defendant was involved.   General assertions regarding who knew what about Plaintiff are not sufficient, and Plaintiff may not merely state the elements of a cause of action without providing any factual allegations in support of his claims. Further, Plaintiff improperly joins claims, and the jumble of references are confusing.

**Federal Rules of Civil Procedure 18 and 20**

Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997).  The "same transaction" requirement refers to similarity in the factual background of a claim.  *Id.* at 1349.  Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not raise different claims against different defendants in a single action. For instance, it appears that Plaintiff is challenging many different policies, or lack thereof; Plaintiff may not allege unrelated claims for challenges to policies related to COVID-19, challenges to policies related to adequate SVPA treatment, and challenges to failure to respond to Freedom of Information Requests and related training failures.

Unrelated claims involving multiple defendants belong in different suits. The complaint is a series of multiple incidents which happened while Plaintiff was housed in CSH. Merely because Plaintiff was housed at CSH when the incidents occurred does not make every injury or incident related. Separate unrelated claims must be filed in separate lawsuits. The Court declines to expend its scarce resources screening improperly joined claims.

**Supervisor Liability**

Insofar as Plaintiff is attempting to sue Defendant Clandenin and Price, or any other defendant, based solely upon his supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at 570. Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

"A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates[.]" *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011). However, a failure to train theory can be the basis for a supervisor's liability in only limited circumstances, such as where the failure amounts to deliberate indifference to the rights of persons with whom the subordinates are likely to come into contact. *See Canell v. Lightner*, 143 F.3d 1210, 1213–14 (9th Cir. 1998). To impose liability under a failure to train theory, a plaintiff must demonstrate the subordinate's training was inadequate, the inadequate training was a deliberate choice on the part of the supervisor, and the inadequate training caused a constitutional violation. *Id.* at 1214; *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989); *Lee v. City of Los Angeles,* 250 F.3d 668, 681 (9th Cir. 2001). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011) (citation omitted).

Plaintiff has not alleged facts demonstrating that any defendant was deliberately indifferent to a need for more or different training. Plaintiff's conclusory allegations of lack of training are insufficient.

**Official Capacity**

Plaintiff asserts that he is suing Defendants Clandenin, Price, and Imparato in their official capacities.

"Suits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their official capacities as a suit against the state of California). An official-capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Id.* at 166.

A claim for prospective injunctive relief against a state official in his or her official capacity is not barred by the Eleventh Amendment provided the official has authority to

9

implement the requested relief. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 92 (1989). Moreover, "[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts of omissions constituting the alleged constitutional violation." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013); *see Rouser v. White*, 707 F. Supp. 2d 1055, 1066 (E.D. Cal. 2010) (proper defendant for injunctive relief in suit seeking implementation of CDCR policy is the CDCR Secretary in his official capacity). Instead, Plaintiff need only identify the law or policy challenged as a constitutional violation and name the official or officials within the entity who is or are alleged to have a "fairly direct" connection with the enforcement of that policy, *see Ex Parte Young*, 209 U.S. 123, 157 (1908), and can appropriately respond to injunctive relief. *Hartmann*, 707 F.3d at 1127 (citation omitted); *see also Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012).

Plaintiff may be able to state facts sufficient to state a cognizable claim, but it appears his claims may be moot, as discussed below.

**Fourteenth Amendment – Conditions of Confinement**

To state a claim that the conditions of his confinement violate his due process rights under the Fourteenth Amendment, Plaintiff must allege facts showing the conditions amount to "punishment." *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004). Punitive conditions of confinement are those that are either expressly intended to punish or those that are "excessive in relation to the alternative purpose [for confinement]." *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)). "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982). A civilly committed individual's right to constitutionally adequate conditions is protected by the substantive component of the Due Process Clause of the Fourteenth Amendment. *Id.* at 315. To determine whether these substantive due process rights have been violated, the Court must balance the individual's "liberty interests against the relevant state interests." *Id.* at 320–21. The proper standard in determining whether a condition or restriction is constitutional for a civilly committed individual is whether "professional judgment in fact was

exercised," rather than the "deliberate indifference" standard used for Eighth Amendment cruel and unusual punishment claims brought by prisoners. *Id.* at 312 n.11, 322. "[D]ecisions made by the appropriate professional are entitled to a presumption of correctness," and "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323–24.

The Ninth Circuit has analyzed such conditions of confinement claims under an objective deliberate indifference standard. *See Castro v. Cty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc) (adopting objective deliberate indifference standard based on *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), to evaluate failure to protect claim brought by pretrial detainee). That standard demands that: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Castro*, 833 F.3d at 1071.

Although "COVID-19 poses a substantial risk of harm," plaintiff has not put forth allegations of each defendant's culpable state of mind to the risks posed by COVID-19. *See Martinez v. Sherman*, No. 1:21-cv-1319 BAM (PC), 2022 WL 126054, at *6, 2022 U.S. Dist. LEXIS 7304, at *15–16 (E.D. Cal. Jan. 13, 2022) ("It is clear that COVID-19 poses a substantial risk of serious harm," however, to state a claim plaintiff must allege that the defendant "acted with indifference to the risks posed by COVID-19.") (collecting cases). The allegations do not show that each defendant acted unreasonably to the risk. *Cox v. Bal*, No. 2:22-cv-0804 WBS EFB, 2024 WL 4977193, at *1 (E.D. Cal. Dec. 4, 2024) (citations omitted). Plaintiff complains of certain policies which were not in effect but fails to identify whether staff implemented reasonable measures to protect Plaintiff and other inmates from the risks of contracting COVID-19. Plaintiff's disagreement that more or different things could have been done to further protect

1  from COVID-19 is not the standard. The protections efforted need not be perfect, as long as they
2  are a reasonable response. *See Benitez v. Sierra Conservation Ctr., Warden*, No. 1:21-CV-00370
3  BAM PC, 2021 WL 4077960, at *6 (E.D. Cal. Sept. 8, 2021), report and recommendation
4  adopted, No. 1:21-CV-00370 NONE BAMPC, 2021 WL 4593841 (E.D. Cal. Oct. 6, 2021)
5  (finding implementing measures of quarantining, isolation, vitals check, and restricting housing
6  movement as reasonable); *Kersh v. Gastelo*, 2022 WL 17548074, at *5 (C.D. Cal. Aug. 23, 2022)
7  (finding implementing measures of quarantining, testing, and dorm-reconfiguration as
8  reasonable), findings and recommendations adopted by, 2022 WL 16783847 (C.D. Cal. Nov. 4,
9  2022); *Demauria v. Rio Consumnes Corr. Facility*, No. 2:22-CV-0052 AC P, 2023 WL 6626503,
10 at *2 (E.D. Cal. Oct. 11, 2023) (the lack of a COVID-specific policy, absent more, does not
11 demonstrate a violation of plaintiff's rights).

12 Moreover, Plaintiff fails to attribute any specific conduct to these defendants, other than
13 that they were supervisors. As explained, supra, supervisor liability is insufficient to state a
14 cognizable claim against these defendants. *See Willard v. Cal. Dep't of Corr. & Rehab.*, No. 14-
15 0760, 2014 WL 6901849, at *4 (E.D. Cal. Dec. 5, 2014) ("To premise a supervisor's alleged
16 liability on a policy promulgated by the supervisor, plaintiff must identify a specific policy and
17 establish a 'direct causal link' between that policy and the alleged constitutional deprivation.").

18 **Moot Claim**

19 It is unclear from the complaint whether Plaintiff is challenging policies currently in effect
20 or only those in place during the COVID-19 pandemic. To the extent that some or all the policies
21 described by the complaint are no longer in effect, Plaintiff's request for injunctive relief is moot.
22 *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 864 (9th Cir. 2017) ("[a] request for injunctive
23 relief remains live only so long as there is some present harm left to enjoin.") (quoting *Taylor v.
24 Resolution Trust Corp.*, 56 F.3d 1497, 1502 (D.C. Cir. 1995)); *Herrera v. Price*, No. 1:21-CV-
25 01070-HBK (PC), 2023 WL 7168272, at *2 (E.D. Cal. Oct. 31, 2023), report and
26 recommendation adopted, No. 1:21-CV-01070-KES-HBK (PC), 2024 WL 2274991 (E.D. Cal.
27 May 20, 2024). A moot claim "is one where the [applicable] issues are no longer live or the
28 part[y] lack[s] a legally cognizable interest in the outcome." *Sample v. Johnson*, 771 F.2d 1335,

1338 (9th Cir. 1985) (citation omitted). "Federal courts lack jurisdiction to decide moot [claims] because their constitutional authority extends only to actual cases or controversies." *Id.* (citing *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)); *See Brach v. Newsom*, 38 F.4th 6, 11-15 (9th Cir. 2022) (finding moot plaintiff's request for injunction and declaratory judgment regarding California school reopening plan during COVID-19 pandemic because state had lifted all restrictions on school reopening); *Walter v. Delano*, No. 21-cv-05666-HSG, 2024 WL 11835464, at *1 (N.D. Cal. June 6, 2023) ("several cases have concluded that claims based on COVID-19 safety policies are moot and federal courts lack subject matter jurisdiction following the lifting of such restrictions"); *McLaughlin v. Tanner*, No. 13-6563-DEK, 2014 WL 6485644, at *1 (E.D. La. Nov. 18, 2014) (plaintiff's claims challenging policy requiring that inmates in disciplinary confinement on extended lockdown remain in restraints while exercising outside of their cell rendered moot by plaintiff's transfer to "a working cell" and finding plaintiff's "claims for declaratory and injunctive relief are now moot, the Court no longer has subject matter jurisdiction to consider those claims"). In sum, Plaintiff is challenging policies which appear to be no longer in effect and challenging the lack of policies during the COVID-19 pandemic. His claims for injunctive relief are now moot. *Sample*, 771 F.2d at 1338.

**Failure to Investigate**

Plaintiff's failure to investigate claims are not a basis for a plausible § 1983 claim. *Baker v. Beam*, 2019 WL 1455321, at *6 (E.D. Cal. 2019); *Drake v. Ibal,* No. 1:22-CV-01149 BAM PC, 2022 WL 18027808, at *8 (E.D. Cal. Dec. 30, 2022) (no claim for faulty investigation for removal of evidence from the investigative file). To the degree Plaintiff is trying to hold the individuals or others liable for an independent, unspecified constitutional violation based upon an allegedly inadequate investigation, there is no such claim. *See Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."); *Page v. Stanley*, 2013 WL 2456798, at *8–9 (C.D. Cal. June 5, 2013) (dismissing Section 1983 claim alleging that officers failed to conduct thorough investigation of plaintiff's complaints because plaintiff "had no constitutional right to

any investigation of his citizen's complaint, much less a 'thorough' investigation or a particular outcome"); *Tirado v. Santiago*, No. 1:22-CV-00724 BAM PC, 2022 WL 4586294, at *5 (E.D. Cal. Sept. 29, 2022), report and recommendation adopted, No. 1:22-CV-00724 JLT BAM PC, 2022 WL 16748838 (E.D. Cal. Nov. 7, 2022) (no constitutional claim for failing to investigate an appeal).

### Processing of Appeals

To the extent Plaintiff is complaining about the appeals process, Plaintiff is informed that he does not have a constitutionally protected right to have his appeals accepted or processed. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. *See also Givens v. Cal. Dep't of Corrs. & Rehab.*, No. 2:19-cv-0017 KJN P, 2019 WL 1438068, at *4 (E.D. Cal. Apr. 1, 2019) ("California's regulations grant prisoners a purely procedural right: the right to have a prison appeal.") Therefore, prison officials are not required by federal law to process inmate appeals or grievances in a particular way. Consequently, the failure or refusal to process a grievance or the denial, rejection, or cancellation of a grievance does not violate any constitutionally protected right. *See Rushdan v. Gear*, No. 1:16-cv-01017-BAM (PC), 2018 WL 2229259, at *6 (E.D. Cal. May 16, 2018); *Givens*, 2019 WL 1438068, at *4; *Valles v. Gamboa*, No. 1:22-CV-00355 BAM PC, 2022 WL 1294424, at *3–4 (E.D. Cal. Apr. 29, 2022) (no claim for failure to comply with timely processing requirements).

### Declaratory Relief

To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). If this action were to reach trial and the jury

returned a verdict in favor of Plaintiff, then that verdict would be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

### III. Failure to Prosecute and Failure to Obey a Court Order

#### A. Legal Standard

Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal." *Thompson v. Hous. Auth.*, 782 F.2d 829, 831 (9th Cir. 1986). A court may dismiss an action, with prejudice, based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. *See, e.g.*, *Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–33 (9th Cir. 1987) (dismissal for failure to comply with court order).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

#### B. Discussion

Here, Plaintiff's first amended complaint is overdue, and he has failed to comply with the Court's order. The Court cannot effectively manage its docket if Plaintiff ceases litigating his case. Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

The third factor, risk of prejudice to defendant, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. *Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976). The fourth factor usually weighs against

dismissal because public policy favors disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction," which is the case here. *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

Finally, the Court's warning to a party that failure to obey the court's order will result in dismissal satisfies the "considerations of the alternatives" requirement. *Ferdik*, 963 F.2d at 1262; *Malone*, 833 at 132–33; *Henderson*, 779 F.2d at 1424. The Court's November 19, 2025 screening order expressly warned Plaintiff that his failure to file an amended complaint would result in a recommendation of dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim. (ECF No. 12.) Thus, Plaintiff had adequate warning that dismissal could result from his noncompliance.

Additionally, at this stage in the proceedings there is little available to the Court that would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. As Plaintiff is proceeding *in forma pauperis* in this action, it appears that monetary sanctions will be of little use and the preclusion of evidence or witnesses is likely to have no effect given that Plaintiff has ceased litigating his case.

### IV.    Conclusion and Recommendation

Accordingly, the Court HEREBY DIRECTS the Clerk of the Court to randomly assign a District Judge to this action.

Furthermore, the Court finds that dismissal is the appropriate sanction and HEREBY RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim, for failure to obey a court order, and for Plaintiff's failure to prosecute this action.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." **Objections, if any, shall not exceed fifteen (15) pages**

**or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 5, 2026**              /s/ *Barbara A. McAuliffe*
                                           UNITED STATES MAGISTRATE JUDGE